# Riggs *v.* Fuller *et al.*

### *Real Action in the Nature of Ejectment.*

1. *Designatio personæ; what regarded as.*—Where the terms and covenants of a deed import that the grantor was seized, and covenanted and conveyed in his own right, his designating himself "administrator of the estate of J. D. R., deceased," will be regarded as mere *designatio personæ.*

2. *Color of title; what admissible to show.*—Such a deed made by an administrator, with the will annexed (the will giving no power of sale and a sale not having been ordered by any court), although void as a conveyance of the testator's estate, is admissible to show color and claim of title in the grantee and those claiming under him.

3. *Sale by one heir; when purchaser holds adversely to all.*—A sale and conveyance by one heir of the entire fee to a stranger who takes possession, claiming the exclusive title, converts the possession of the purchaser into adverse possession, which, if continued for the time prescribed by the statute of limitations, will bar the entry of the other heirs.

4. *Adverse possession; what indispensable to.*—Continuity is an indispensable element of adverse possession. If several persons enter at different times, between whom there is no privity of estate, the several possessions can not be tacked so as to make a continuity of possessions on which the statute of limitations will operate; otherwise, where there is such privity of estate, as the possession of landlord and tenant, vendor and vendee, ancestor and heir.

5 *Revised Code,* § 2910; *construed.*—Under the provisions of the Revised Code (§ 2910), the operation of the statute is not suspended during the continuance of the disabilities therein enumerated. Where disabilities occur and continue with the right during the whole time necessary to constitute the bar, the whole additional period allowed by the statute, after the removal of the disability, must elapse before the bar is complete; but where any portion of such additional period elapses during the time constituting the bar, it must be

deducted from the time allowed for bringing suit, after the removal of the disability.

6.   *Charge; presumptions made to uphold.*—An affirmative charge, correct as a legal proposition under any state of facts that could have existed in the case, will be presumed to have been authorized by the evidence, unless the contrary affirmatively appears.

APPEAL from Circuit Court of St. Clair.

Tried before Hon. W. L. WHITLOCK.

The appellant, Columbus W. Riggs, brought a real action in the nature of ejectment against the appellees, to recover certain lands, on the 16th day of January, 1873.

The lands in controversy formerly belonged to John D. Riggs, deceased. Appellant was his youngest son, and claimed title as heir. He was born some time in May, 1849. The appellees claimed title through certain conveyances and possessions thereunder, as hereafter shown.

John D. Riggs died in the year 1852, leaving a widow who survived him for two or three years, and several children. He also left a last will and testament, which was duly admitted to probate. The will provided, among other things, that the testator's land should not be sold, but kept together until his youngest child became of age. William G. Riggs, a son of the testator, was appointed and qualified as administrator *cum testamento annexo*, and on the 19th day of March, A. D. 1856, without any order of court, or other known authority (he having no title or interest whatever in the lands, except as an heir), sold and conveyed the premises to Charles Pearson, since deceased. Pearson took peaceable possession under this deed and remained in possession, claiming and holding the lands as his own, until his death in the year 1862. He left a widow, who afterwards intermarried with one Spruell, and a minor child, Julia, under fourteen years of age, two of the appellees. He also left a last will and testament, which was duly probated, of which McClendon and James Pearson qualified as executors. The will itself is not set out in the record. After Pearson's death his widow and child remained in the actual and peaceable possession of the tract sought to be recovered of them, until it was set apart and conveyed them as a homestead, and have ever since continued in possession.

On the 5th day of November, 1866, the executors of Pearson filed their petition in the probate court, reciting that the will gave no power to sell land, and that the lands "are so situated, and are of such dimensions that they can not be equitably divided among the heirs," (who are stated to be the widow and a minor child) and praying an order of sale for that purpose. This petition also shows that more than

eighteen months had elapsed from the grant of letters testamentary, and that the estate was solvent. The probate judge being disqualified, the cause was heard before the register in chancery, who set a day for the hearing, appointed a *guardian ad litem* for the minor, and caused notice to issue to the widow, &c.

On the day appointed, the *guardian ad litem* having appeared, accepted in writing and filed an answer in writing denying the allegations of the petition, the register upon proof by disinterested witnesses, taken by deposition as in chancery proceedings, showing the necessity for sale, granted the order of sale of the lands in controversy, and other lands belonging to the testator, as prayed in the petition. The sale was made, as directed, and the appellee Fuller became the purchaser of a portion of the lands in controversy. It was duly reported to and confirmed by the court, and upon payment of the purchase money, a conveyance was ordered and executed on the 15th day of June, 1868. Fuller entered into possession after the date of the confirmation, on the 8th day of February, 1867, and has so continued ever since, claiming under the purchase and conveyance.

It appears that Pearson's widow dissented from the will, and demanded dower, and by her written consent the lands were sold, freed from the claim of dower. The probate court, upon petition of the widow, asking that real estate of the value of $500, be set apart to her and her minor child, as exemptions, and that she was unable to set apart said lands, but the executors were willing to do so for her—made an order directing the executors to select and set apart such lands, &c., including the homestead, and report to the court. The executors having reported a selection and setting apart of land (which was accepted by the widow), the report was approved, and the register, acting as probate judge, directed a conveyance by the executors to the widow, of the lands thus set apart, which was accordingly made on the 1st day of September, 1867, to the widow and her minor child, Julia. This was the claim of the title shown by the appellees Spruell and Julia Pearson, they having taken possession on the day the conveyance bears date, and so continued in possession ever since. The suit being brought against all the appellees for the possession of the entire tract sued for, they respectively disclaimed possession as to that part in the possession of their co-defendants.

The deed from William G. Riggs to Pearson, conveying the premises sued for, was as follows: "This indenture, made the 19th day of March, 1856, between William G. Riggs, administrator of the estate of John D. Riggs, deceased,

[Riggs v. Fuller et al.]

party of the first part, and Charles W. Pearson of the second part," . . . "witnesseth, that whereas the party of the first part, in consideration of the sum of $500 to him in hand paid, the receipt whereof is hereby acknowledged, hath this day bargained and sold, and by these presents doth bargain and sell, and enfoeff and convey unto said Charles M. Pearson, . . . to have and to hold to him and his heirs forever, . . . and the party of the first part, for and against himself, his heirs, executors and administrators, do and by these presents will forever warrant and defend said title from the lawful claim of him, his heirs, and from all persons whatsoever. In testimony whereof said party to the first part hath hereunto set his hand and affixed his seal," &c. This deed was signed by Riggs as an individual merely.

When the appellees offered the deed "to show color of title in Charles M. Pearson, and for every other purpose for which they might offer it," the appellant objected, on the grounds that there had been no order of sale; that the will conferred no authority to sell, and that the probate court had never confirmed the sale or ordered any conveyance. These objections were overruled, and appellant excepted.

When the deed of Pearson's executors to the appellee Fuller was introduced, the appellant objected, on the ground that the order of sale and conveyance under it were void, and that the probate court or register had no jurisdiction to make the order of sale, &c. His objections were overruled and he excepted, the judge remarking that he would let the record and deed go in evidence and he would charge right on that point.

Appellant also objected to the introduction of the deed of Pearson's executors conveying the lands set apart as a homestead, to the appellees Spruell and Julia Pearson, on the ground that the estate not being insolvent, there was no necessity for sale, &c. A similar ruling was made, and like exception reserved as to the introduction of the conveyance to Fuller.

The foregoing is the substance of the evidence set forth in the bill of exceptions, which states, "this being all the evidence upon the question of title to the land in controversy, the court charged the jury," &c.

The court charged the jury, in substance, that if Pearson went into possession of the lands, under the deed from W. G. Riggs, on the 19th of March, 1856, and continued in actual, peaceable and undisturbed possession until his death, and that at his death the appellee Spruell and Julia Pearson went into possession as his next of kin, together with his executors, and held the same peaceably and adversely until

the sale by the executors to the appellee Fuller, in 1867, and that under that conveyance he went into peaceable possession of the portion of the land conveyed to him, and so continued to hold the same undisturbed, peaceably and as his property up to the time this suit was brought—"then Fuller was entitled to the period of time Pearson, deceased, had the lands, added to the time he himself had it in possession, in making out the statute of limitations and adverse peaceable possession of ten years, (deducting the period during which the statute was suspended during the late war), and plaintiff can not recover if he failed to bring the suit within three years next after he attained his majority."

The court further charged the jury, in substance, that they could look to the deed from Riggs to Pearson, and from Pearson's executors to Fuller, and to the other appellees, for the purpose of showing color of title in them to the lands, and for no other purpose.

The court further charged the jury, that "if C. M. Pearson, immediately after his purchase, went into actual and peaceable possession of the lands under such color of title, and so held the same up to the time of his death, and that he died leaving a widow and only child, who continued in peaceable possession until the land was assigned them as a homestead, as shown by the evidence, and afterwards held the same peaceably and undisturbed up to the time the suit was brought, they would be entitled to the time which C. M. Pearson so held, as a portion of the time necessary to create the bar of ten years, deducting the period during which the statute of limitations was suspended during the late war."

Appellant excepted separately to the giving of each of these charges, and here assigns them, together with the rulings of the court upon the introduction of the deeds offered in evidence, as error.

LeRoy F. Box, for appellant.

John W. Inzer, contra.

BRICKELL, C. J.—The specific objections to the introduction as evidence of the deed made by William G. Riggs to C. M. Pearson, are all reducible to this: That the grantor, as administrator with the will annexed of the ancestor of the appellant, was without power or authority to sell and convey the lands. This may be admitted, and as a conveyance by the administrator of the right and title of his testator the deed is void, not even casting a cloud on the title

of the heirs, to whom the lands had descended.—*Posey v. Conway*, 10 Ala. 811. The deed is not, however, made by the grantor in his representative capacity. He is described as " administrator of the estate of John D. Riggs, deceased." This can be regarded only as a *designatio personæ.—Innerarity v. Kennedy*, 2 Stew. 159. The deed in all its operative terms imports that the grantor was seized in his own right in fee of the lands, and purports to convey them in fee simple, and not the mere right, title or claim of another. It has full covenants of warranty, all of which are obligatory on the grantor individually, and for a breach of which he would be bound to respond individually.— *Whiteside v. Jennings*, 19 Ala. 784. The grantor was one of the heirs to whom the lands had descended. A sale and conveyance by him of the entire fee to a stranger, who takes possession claiming the exclusive title, operates a *disseissin* of the other heirs, and converts the possession of the stranger into an adverse possession, which, if continued the length of time prescribed by the statute of limitations, will bar the entry of the other heirs.—*Clapp v. Bromaghan*, 9 Cow. 556; *Law v. Patterson*, 1 Watts & Sergt. 184. Though the deed as a conveyance of the title of ancestor was obnoxious to the specific objections made, and was invalid and inoperative, it was admissible, as color and claim of title in Pearson the grantee, to give character to his possession. It is enough that one is in possession under a claim of title, apparently conferring the right to clothe his possession with the character of an adverse possession.—*Saltmarsh v. Crommelin*, 24 Ala. 352; *Dillingham v. Brown*, 38 Ala. 311.

Continuity is an indispensable element of an adverse possession. If several persons enter on lands at different times, and there is not a privity of estate between them, the several possessions cannot be tacked so as to make a continuity of possession on which the statute of limitations will operate. But if there is such privity of estate, or of title, as that the several possessions can and should be referred to the original entry, they are regarded as joined and continuous.—Ang. on Lim., §§ 413, 414. The possession of a landlord and his tenant, of an ancestor and his heirs, of a vendor and his vendee, may be tacked to complete the bar of the statute of limitations. There is no break or interruption in the possession—each possessor is connected with his predecessor, and the whole is a continuous possession.— *Overfield v. Christie*, 7 Sergt. & Rawls, 177; *Valentine v. Cooley*, Meigs, 613; *Alexander v. Cranch*, 8 Cranch, 464. The possession of Fuller, the purchaser at the sale made by the executors of Pearson, and of the widow and heirs of Pear-

[Riggs v. Fuller et al.]

son, after his death, was but a continuance of Pearson's possession, all referrible to his original entry. It was, therefore, proper that evidence of such possession should be received, and the conveyances under which it was taken, were proper evidence to show its character and its connection with Pearson's entry and possession. It may be the proceedings in the court of probate, under which Fuller claimed as purchaser, were irregular and insufficient to divest the title of Pearson's heirs; and that the allotment of homestead to the widow and minor child, was irregular and void as to the child. An invalid or defective title gives color of title, and is a claim of title, which will constitute a possession adverse, and may show the relation in which the possessor enters and claims possession. "Color of title, even under a void and worthless deed, has always been received as evidence that the person in possession claims for himself, and of course, adversely to all the world."—*Pillow v. Roberts*, 9 How. 477.

In *Griffins v. Tottenham*, 1 Watts & Sergt. 488, it is held if one enter upon land claiming, but without title, and die in possession, leaving a widow and children, one of whom continues in possession and conveys the land to a third person, who goes into possession and continues it to a period exceeding the bar of the statute of limitations, the law will tack the possessions together so as to make a good title under the statute. The possessions were all, as in this case, connected with and derived from the original entry. They could not properly be regarded as the separate and independent tortious acts of several trespassers.

The appellant's cause of action accrued on the 19th May, 1856. His infancy terminated in May, 1870, according to the evidence set out in the bill of exceptions. Deducting the period of the late war, during which the operation of the statute of limitations was suspended, (from the 11th day of January, 1861, to the 21st of September, 1865,) ten years, the time prescribed within which an action for the recovery of lands or the possession thereof must be brought, expired on the 29th January, 1871, when the appellant was of full age. The suit was commenced on the 16th January, 1873, within less than three years after the termination of appellant's infancy. The court charged the jury, that the defendant Fuller, the vendee of the executors of Pearson, and the widow and heir of Pearson, who were also defendants, could unite or tack their several possessions to that of Pearson, so as to make out the period of ten years within which the statute would operate a bar. The court further charged, that in computing the ten years, the time during which the

statute was suspended by the late war, must be deducted. It is apparent from what we have said, in considering the admissibility of the evidence objected to thus far, the court has not erred. The court further charged, that if computing the time as stated, there had been ten years adverse possession, the appellant was not entitled to recover, unless he sued within three years next after he attained majority. As a legal proposition, this part of the charge is also correct. The purpose of the statute of limitations, as applied to possessions of real or personal property, is to quiet the title. Its operation is to convert an actual possession, open and notorious, hostile to the true owner in its inception and continuance, if existing for the prescribed period, into a rightful title. The tendency of modern legislation is, to lessen the period for the continuance of possessions, which will bar the entry of the true owner, and perfect the title of the possessor. Under the statutes of force in this State, prior to the Code of 1852, infancy, coverture and insanity, were disabilities suspending the operation of the statute. The period of such disability was not computed, and the whole time prescribed, must have elapsed after the removal or termination of such disability before the bar was complete.—Clay's Dig. 3.6, 329. The Code changed the statutes, and declares: "If any one entitled to bring any of the actions enumerated in this chapter, or to make an entry on land, or defense founded on the title to real property, be at the time such right accrues, within the age of twenty-one years, a married woman, or insane, or imprisoned on a criminal charge, for any term less than for life, *he or she has three years after the termination of such disability to bring suit, make entry or defense.* But no disability will extend the period of limitation, so as to allow such action to be commenced, entry or defense made, after the lapse of twenty years from the time of the cause of action, or right accrued.—R. C. § 2910.

This statute does not, as did the former statutes, suspend the operation of the statute of limitations during the continuance of the enumerated disabilities. Its theory is, that ten years from the accrual of the right shall bar an entry, or an action for the recovery of lands or the possession thereof. Disabilities occurring with the right, shall not suspend the operation of the statute, but three years shall remain to the person laboring under them, after their removal, within which to assert the right. Such is the language and policy of the statute. The former statute excluding the period of disability, from the computation of the bar, was supposed to render titles and possessions too insecure, and unreasonably to prolong the day of litigation. To remedy the mischief,

was the purpose of the present statute. If ten years of adverse possession elapse during infancy, it is not doubted, the infant has three years after majority within which to pursue his legal remedy. But suppose seven years, or any longer period less than ten have elapsed, has he, in addition to three years, such length of time as will make full ten years within which to sue? We are of the opinion he is entitled to the full period of ten years to bring his action, but if three years of that time elapse after the termination of his infancy, he is barred. So of any other and shorter period, so that he is allowed ten years, during three of which he is not under the disability. The English statute, 21 James I., C. 16, enacted that no person should make entry into lands, but within twenty years next after the right or title accrued. It contained an exception in favor of infants, *femes covert*, *non compotes mentis*, &c., that they or their heirs could, notwithstanding the lapse of twenty years, bring action, or make entry, within ten years after the removal of the disabilities. Under that statute the period of ten years was computed from the removal of the disability, though it comprehended a part of the period of twenty years necessary to perfect the bar.—*Cotterel v. Dalton*, 4 Taunt. 826; *Doe v. Jesson*, 6 East, 79. The English statute was substantially re-enacted in New York, and in Pennsylvania, and received the construction given it by the English courts.— *Weddle v. Robertson*, 6 Watts, 486; *Henry v. Carson*, 59 Penn. 297; *Demarest v. Wynkoop*, 3 Johns. Ch. 129; *Wilson v. Betts*, 4 Denio, 201; *Thorp v. Raymond*, 16 How. (U. S.) 247. This construction did not allow to persons laboring under disability, the same number of years after they became of competent ability, as was allowed to those freed from disability. It allowed them that period, but computed as part of it the period of disability, when the disability had been removed the full period allowed them for suing after its removal. The theory of the statute, thus construed, is the theory of our present statute—that disabilities do not suspend the operation of the statute—a defined period after their removal must elapse, within which the party may make entry or bring action. This period may comprehend more or less of the time necessary to constitute a bar prescribed by the statute. Supervenient or cumulative disabilities never arrest or prolong the bar of the statute; and the period of the bar should not be extended by tacking to it the time allowed for bringing suit after the removal of disability, when the party has already its full benefit during the running of the statute. The meaning of the statute is, that if ten years elapse, during which the disability continues, then three years will be

[Woods & Co. v. Armstrong.]

allowed after its termination, cumulatively, for the bringing of suit or making entry, if thereby the time is not prolonged beyond twenty years. But if ten years have elapsed, during three of which the disability was not existing, the party has had the time the statute intended, freed from disability, and the bar is complete. We repeat, then, as a legal proposition, the first affirmative charge of the court is correct. True it is, if the bill of exception sets out all the evidence, the appellant was not barred under the principles we have announced. It is well settled by numerous decisions of this court, that an affirmative charge, correct as a legal proposition, under any state of facts that could have existed in the case, will be presumed to have been authorized by the evidence, unless the contrary affirmatively appears.—1 Brick. Dig. 337, § 23. The bill of exceptions purports to set out all the evidence only "upon the question of title," thus indicating there was other evidence on other points not set out in the bill. The only other points on which we can conceive there could have been evidence, were the age of the appellant, and the damages for the use and occupation of the lands. It is but a just presumption in favor of the ruling of the circuit court, that a disputed question of fact was, whether the appellant had attained majority more than three years before the commencement of suit. The presumption is not inconsistent with the statement of facts in the bill of exceptions.

The remaining charges of the court conform to the views we have expressed. The judgment must be affirmed.