# Molton *v.* Henderson.

### *Bill in Equity to declare and enforce Trust.*

1. *Lunacy; inquisition of; what void.*—An inquisition of lunacy had without personal notice to the alleged *non compos* is void, and so is the appointment by the Probate Court of a guardian for said lunatic, and the proceedings had by such guardian for a sale of lands belonging to said lunatic.

2. *Statute of limitation; what within protection of.*—The possession of lands under a conveyance of a guardian, made in pursuance of a void decree of the Probate Court for their sale, is supported by color of title and is adverse, protected by the statute of limitations.

*Same; when begins to run.*—Where the legal title to lands resides in trustees or a survivor of them, and such lands are sold by a guardian of the *cestui que trust,* under void proceedings, and the purchaser goes into possession, the statute of limitations begins to run from the date of such sale, and possession under it, and is not suspended by the death of the trustees, after such possession accrued.

3. *Cestui que trust; when barred.*—Where both the trustee and *cestui que trust* have been out of possesion of lands, held adversely to them for the length of time necessary to perfect the bar of the statute of limitations, the *cestui que trust* will be barred, even though he was all the time under a disability, such as minority, coverture or insanity; and this principle applies as well to equitable as to legal interests of the *cestui que trust.*

4. *Limitations, statute of; to what applicable.*—A wider operation is given to the statute of limitations, when applied to adverse possessions, than when applied to contracts; the latter are not extinguished by it, but the remedies for their enforcement are barred, but as to property, a possession protected by the statute ripens into a perfect indefeasable title.

5. *State; when subject to statute of limitations.*—Where the State holds lands as a mere trustee, it is subject to the operation of the statute of limitations.

APPEAL from Elmore Chancery Court.

Heard before Hon. CHAS. TURNER.

The bill in this case was filed by the appellant, William P. Molton, by next friend, against the appellee, Green C. Henderson, and seeks to have certain lands, then in the possession of Henderson, declared subject to the trusts created by the will of Thomas Molton, the father of complainant, for his benefit. The facts may be thus stated: Thomas Molton owned the lands and died in 1845, leaving a last will and testament, by which he devised the lands in question to "John Henly and Catherine Molton, and the survivor of

them, upon the express trust and confidence that the said John Henly and Catherine Molton, or the survivor of them, shall apply the rents and profits of said land to the support and maintenance of my son, William Molton, during the term of his natural life, unless the said William Molton should be restored to his reason, sufficiently to transact the ordinary business of life, in which event it is my will and desire that the trust hereby created shall cease and determine, and that the said John Henly and Catherine Molton, or the survivor of them, shall convey said lands to the said William Molton. And in the event that the said William Molton should depart this life without being restored to reason, then it is my will that the said John Henly and Catherine Molton, or the survivor of them, shall convey the lands to my children, or such of them as may be living at the death of the said William Molton, to be equally divided between them. William Molton never became sane, and was, at the time of the filing of this bill, still *non compos*. On the 13th day of May, 1857, Thomas J. Molton, a brother of complainant, filed a petition in the Probate Court of Montgomery county, in which he alleged that he "was the brother of one William P. Molton, a male person of about thirty-one years of age, and who has resided, for the last ten or twelve years, in the town of Columbia, district of Richland, State of South Carolina, being an inmate of the Lunatic Asylum at that place. He further represents that he, the said William P. Molton, is *non compos mentis*, and that for the protection of the said William P. Molton, in the county and State aforesaid, it is necessary a guardian should be appointed by the proper tribunal for him. Upon this petition, and without personal notice to William P. Molton, the Judge of Probate made an order, requiring the sheriff to summon a jury to try the question of the sanity of said William P., and at the same time appointed Charles H. Molton guardian *ad litem* to represent him. The hearing of the petition was continued until the 5th day of June, 1857, on which day the court made an order declaring William P. a *non compos* and appointing Thomas J. Molton his guardian, who soon after qualified as such. On the 5th day of September, 1857, Thomas J. Molton, as guradian, filed his petition, praying a sale of the lands, as beneficial to the interests of said *non compos*, and on the 28th day of October, 1857, the court granted an order of sale, under which, on the 5th day of January, 1859, the land was offered for sale, and purchased by Marshall H. Molton. A deed to Marshall H. was made on the 29th day of March, 1859, in accordance with an order reciting payment of the purchase-money. The land then

[Molton v. Henderson.]

passed by successive transfers from Marshall H. to the defendant, Green C. Henderson. John Henly, one of the trustees named in the will, died in 1853, and Catherine Molton, the surviving trustee, died in August, 1872. The bill in this case was filed on the 14th day of September, 1874. The Chancellor granted the relief prayed, declared the lands still subject to the trust created by the will of Thomas Molton, and allowed the defendant the value of permanent improvements made, provided they did not exceed the value of the rents which he held defendant liable to pay. Both parties appeal to this court, the appellant assigning the allowance of the value of the improvement, and the appellee the decree declaring the lands subject to the trust created by the will of Thomas Molton.

ELMORE & GUNTER, and WADE KEYES, for Molton.—While it is well settled, that if a trustee delay the assertion of his rights until the statute effects a bar against him, the *cestui que trust* will also be barred; it must be accepted with this qualification, if the *cestui que trust* is *sui juris.* If the *cestui que trust* is under a disability the statute will not begin to run until the disability is removed.—*House v. Mullen,* 22 Wall. 42; Perry on Trusts, § 860. .The case of *Bacon v. Gray,* 23 Miss. 140, is very persuasive of this doctrine. In the great case of *Marquis Cholmondelay v. Lord Clinton,* 2 Jacobs & Walkers, 1, which is considered as having established the general rule, that when a trustee is barred the *cestui que trust* is barred also, the exception in favor of a *cestui que trust* under disability is expressly recognized. This case and its doctrines are approved and cited by Chief Justice MARSHALL in *Elmendorf v. Taylor,* 10 Wheat. 174.—See, also, case of *Griswold v. Butler,* 3 Conn. 233. None of the cases cited in *Bryan v. Weems,* 29 Ala. 428, militate against this construction of the statute.—See, especially, the case of *Freeman v. Perry,* 2 Dev. 243, and *Falls v. Torrence,* 4 Hawk's Law and Eq. 412; Perry on Trusts, 489, § 860; *Thompson v. Simpson,* 1 Dr. & War. 489; 18 Beav. 239; 3 De-Gex. F. & J. 58; 54 Penn. St. 472. See, also, Ang. on Lim. § 473; *Smilie v. Biffle,* 2 Penn. St. 52. Henderson does not claim paramount to the trust. The law holds him to notice of his claim of title, and if he purchases a trust estate with notice of the trust, he cannot plead the statute.—2 Dev. 243; 3 How. 33.. And the statute will, in no case, run against one innocently ignorant of his rights, nor against one incompetent to enforce them.—2 Wash. Real Prop. 184. The order declaring William P. Molton *non compos* and appointing a guardian for him, was a nullity, and a deed made by such

[Molton v. Henderson.]

guardian is void, and will not constitute color of title.—
33 Cal. 668 ; 1 Cow. 276 ; 5 Cow. 346 ; 8 Cow. 583 ; 12 John.
365 ; 9 Wend. 511 ; see, also, eighth section of Judge Brick-
ell's brief in *Horton v. Sledge*, 29 Ala.

RICE, JONES & WILEY, for Henderson.—This is really an
equitable action of ejectment.—37 Ala. 598 ; 46 Ala. 696, and
is to be governed by its analogy to the action of ejectment.—
2 Ala. 563 ; R. C. § 3381. When the trustee is barred the
*cestui que trust* is also barred.—Story Con. Laws, § 576 ; *Har-
rison v. Heflin*, 54 Ala. It is an unvarying rule that the stat-
ute of limitations begins to run whenever there is some one
to sue and somebody liable to be sued.—2 Brick. 220, and
cases cited. It is also a general rule that when the statute
commences to run, no intervening disability will suspend it.
30 Ala. 61. The statute of limitations, when applied to ad-
verse possession of property, real or personal, operates
directly on the title, and when the bar is perfect the adverse
possessor has an indefeasible right or title.—13 Ala. 641 ;
18 Ala. 248. In this case, adverse possession commenced
before April, 1859, and continued up to the filing of the bill
in 1874. Catherine Molton was, in life, capable of suing,
and Marshall H. was liable to be sued from the moment he
made the purchase, and the statute began to run from that
moment, and long before this suit was brought had vested
the complete title in Henderson, and the bill should have
been dismissed.

BRICKELL, C. J.—The case is before the court on an
assignment of errors by the appellant, and a cross assign-
ment by the appellee. The latter are addressed to the equity
of the bill, and, if well taken, are fatal to the appellant's
right of relief, and a consideration of the former is unneces-
sary.

1. The legal estate in the lands in controversy, was de-
vised to John Henly and Catherine Molton, or the survivor
of them, in trust, for the use and benefit of the appellant,
William P., during his natural life ; but if, at any time, he
should be restored to reason, the trustees were required to
convey the lands to him. If he was not restored to reason,
on his death the trustees were required to convey them to
such of certain children of the testator as should be living
at that time. The bill negatives the happening of the con-
tingency on which the trustees were authorized to convey the
legal estate to the appellant. It is manifest the estate of the
trustees was intended to be co-extensive with the power and
duty they were required to perform, and that it would, if the

[Molton v. Henderson.]

appellant did not become sane, survive his beneficial interest, or equitable estate.—*Comby v. McMichael*, 19 Ala. 747.

2. The inquisition of lunacy had in the Court of Probate against the appellant, without notice to him of its pendency, under the authority of *McCurry v. Hooper*, 12 Ala. 823; *Eslava v. LePetre*, 21 Ala. 504, is void. From its want of validity, necessarily results the invalidity of the appointment of Thomas J. Molton as guardian of the appellant, and of the proceedings had in the Court of Probate for the sale of the lands in controversy.

3. These proceedings may be void, yet a possession under a conveyance made by the guardian, in conformity to the decree of the Court of Probate, for the sale of the lands, is supported by color of title, and is adverse, protected by the statute of limitations.—*Dillingham v. Brown*, 38 Ala. 311; *Saltmarsh v. Crommelin*, 24 Ala. 352; *Riggs v. Fuller*, 54 Ala. 141; *Pillow v. Roberts*, 9 How. U. S. 477.

4. The sale by the guardian was made in January, 1859. The deed to the purchaser, acknowledging the payment of the purchase-money, was executed on the 29th day of March, 1859. The purchaser, Marshall H. Molton, entered into possession immediately after the sale, and he and those claiming under him, by mesne conveyances, remained in open, peaceable possession, claiming the absolute title from thence to the filing of the present bill, on the 4th September, 1874. The surviving trustee, Catherine Molton, was in life until August, 1872. This possession, hostile to the legal estate, furnished her a cause of action for the recovery of the lands, from its commencement in 1859; and from its commencement the bar of the statute of limitations must be computed. The adverse possession was continuous, privity of estate and title existing between Marshall H. Molton, the original possessor, and each subsequent possessor.—*Riggs v. Fuller, supra*. The death of the surviving trustee did not suspend or arrest the operation of the statute of limitations.—*Reed v. Mirrell*, 30 Ala. 61; Code of 1876, § 3248. The statute of limitations is as applicable to suits in equity, as to suits at law.—Code of 1876, § 3758.

5. The equity of the bill is thus resolved into a single question; the trustee not having sued within the statutory period, is the *cestui que trust* barred? In the case of *Lewellen v. Mackworth*, 3 Eq. Cases Ab. 579, Lord HARDWICKE said: "The rule that the statute of limitations does not bar a trust estate holds only between the *cestui que trust* and trustee, not as between *cestui que trust* and trustee on one side, and strangers on the other; for that would make the statute of no force at all, because there is hardly any estate of conse-

[Molton v. Henderson.]

quence without such trust, and so the act would never take place. Therefore, when the *cestui que trust* and his trustee are both out of possession for the time limited, the party in possession has a good bar against them both." In *Horenden v. Lord Annesley*, 2 Sch. & Lef. 628, it was said by Lord REDESDALE, "If the trustee does not enter, and the *cestui que trust* does not compel him to enter, as to the person claiming paramount, the *cestui que trust* is barred." These authorities were cited with approbation in *Colburn v. Broughton*, 9 Ala. 363. In *Bryan v. Weems*, 29 Ala. 428, this court say: "The rule is certainly well settled that if a trustee delay the assertion of his rights, until the statute effects a bar against him, the *cestui que trust* will also be barred." This case is cited, and distinctly recognized as authoritative in the subsequent case of *Fleming v. Gilmer*, 35 Ala. 66.

This is conceded to be the general rule, but it is argued that it should be taken subject to the exceptions contained in the statute of limitations, and as the *cestui que trust* was continuously *non compos mentis*, the rule cannot be applied. The proposition is not new, and though authorities may be found which sanction it, we are not prepared to follow them. The reason of the rule, the principles of public policy in which it has its foundation, and the weight of authority, English and American, forbid engrafting upon it such an exception. The reason of the rule is, that the trust exists only as between trustee and *cestui que trust*; as to strangers, the legal and equitable estate are one; and a bar of the legal comprehends a bar of the equitable estate. In *Wych v. East India Company*, 3 P. W. 310, Lord TALBOT said: "The administrator, during the infancy of the plaintiff, had a right to sue; and though the *cestui que trust* was an infant, yet he must be bound by the trustee not suing in time; for I cannot take away the benefit of the statute of limitations from the company, who are in no default, and are entitled to take advantage thereof as well as private persons, since their witnesses may die, or their vouchers be lost. And as to the trust, that is only between the administrator and the infant." A different opinion, it seems to have been supposed, was expressed by Sir JOSEPH JEKYLL. In *Pentland v. Stokes*, 2 B. & N. 75, Lord MANNERS, speaking of that opinion, said: "The opinion of Sir J. JEKYLL, if it intended to apply to third persons, which I do not conceive it was, has often been denied, and is contrary to many decisions. If the trustees, who are so appointed, neglect their duty, and suffer an adverse possession of twenty years to be held, I apprehend the statute of limitations is a bar to the *cestui que trust*." Of this case, it must be observed that the *cestui que trust*, during a

part of the time, necessary to the bar of the statute, was an infant. The American authorities assert the same doctrine in the best considered cases, as we think. In the case of *Smilie v. Biffle*, 2 Penn. St. 52, the *cestui que trust* was under the disability of coverture. The character of the disability is not material. It may be infancy, coverture, non-residence, or mental incapacity. Whatever it may be, it must be an exception expressed in the statute of limitations. If it is not one of these exceptions, the courts cannot add it as an exception to those which the statute has enumerated. Nor can one exception be allowed a larger operation than another, because its subject may be more pitiable, and may appeal more strongly to our sympathies. In the case to which we have referred, the court, after declaring the rule that where *cestui que trust* and trustee are both out of possession, for the time limited, the party in possession has a good bar against both, say : "Indeed, the wonder is that so plain a proposition should ever have been doubted. A party obtains an inceptive title, by an adverse holding, subject to be defeated only by the entry of the legal estate at any time within twenty-one years"—that being the statutory bar in Pennsylvania. "And the trustee may be compelled by the *cestui que trust* to enter, so as to avoid the adverse possession ; and the *cestui que trust* may himself enter as a defeasor." Reciting the particular facts of the case, and declaring the title of the purchaser was manifestly defective, the court continue : "But Nicholson took possession of the premises in pursuance of the contract, and held the same for twenty-one years. He, therefore, held adversely to both *cestui que trust* and trustee, and consequently obtained by the statute of limitations, an indefeasible title, which cannot now be disturbed or gainsaid. The statute of limitations is emphatically a statute of repose." And in conclusion it is said : "When the act commences running, it continues to run, as is well settled. It would strike me to be an anomaly, that the owner of the legal estate should be barred, and that the owner of the equitable title, whether his interest be an interest in possession, or by way of remainder, should nevertheless be entitled to enter. Equity follows the law, and courts of equity have adopted the act of limitations by analogy." The rule is recognized in *Williams v. Otey*, 8 Humph. 563 ; *Woolridge v. Planters Bank*, 1 Sneed, 297 ; *Long v. Cason*, 4 Rich. Eq. 60, in which the *cestuis que trust* labored under the disability of infancy ; and in *Herndon v. Pratt*, 6 Jones' Eq., in which the disability was coverture. In this last case, the court concisely express the rule and its reasons : "For statutes of limitation and statutes giving

title by adverse possession, would be of little or no effect, if their operation did not extend to *cestuis que trust* as well as trustees who hold the title for them, and whose duty it is to protect their rights. If, by reason of neglect on the part of the trustees, *cestuis que trust* lose the trust fund, their remedy is against the trustees, and if they are irresponsible it is the misfortune of the *cestuis que trust*, growing out of the want of forethought on the part of the maker of the trust, under whom they claim."

The statute of limitations has in its application to adverse possessions of property, real or personal, a very different and wider operation than when applied to contracts. Contracts are not extinguished by its operation—remedies for their enforcement are barred, the obligation of the contract remaining unimpaired. But as to property, a possession protected by the statute, ripens into a perfect, indefeasible title, which cannot be gainsaid.—*Bohannon v. Chapman*, 13 Ala. 641. The statute as to contracts must be pleaded to be available as a defense; but as to possessions, it may be given in evidence under the general issue. It would be a strange anomaly, if the statute would clothe the adverse possessor with the legal estate, which he acquires, and holds, and asserts in hostility to the equitable estate, and yet subject the legal estate to be defeated by that equitable estate. As to equitable estates, the statute would be shorn of all strength, and they would remain a cloud on the alienation of the legal estate, narrowing the sphere of the operation of the statute of limitations, and subjecting the possessor to the perils of injury, from the sense of security a long and open possession naturally begets, and which the law intends to inspire and encourage. On principle and authority, therefore, we must say the fact the appellee was *non compos mentis*, and yet so remains, cannot prevent the operation of the general rule to which we have referred. If his trustees have been negligent in asserting the legal title, the law affords him remedies against them, which are without the operation of the statute. These remedies, if he has been wronged, he must pursue.

But it is urged that the decisions, to which we have referred, were made when the statute of limitations was not expressly applicable to courts of equity; and as our statute now declares that it is as applicable to suits in equity, as to suits at law, when applied to suits in equity, the application must be with the exceptions in favor of *non compotes mentis*, infants, &c. Whatever may have been the doubts elsewhere as to the application of the statute to suits in equity, in this State, the rule prior to the statute was well settled. In all

[Durrett v. The State.]

cases of concurrent jurisdiction, the statute was as obligatory on courts of equity as of law. Though the statutes did not expressly apply to equitable demands, yet in a court of equity, they were applied by analogy. In either case, the exceptions of infancy, &c., were recognized and given effect to by courts of equity.—1 Brick. Dig. 698, §§ 852–54. The present statute is, as are many of the sections of the Code, merely affirmatory and declaratory of the law as it had been settled by judicial decision. It cannot and was not intended to remove from the bar of the statute the equity of a *cestui que trust* to pursue a stranger to the trust when the legal estate is barred, the bar comprehending, as it must, the equitable estate, unless the unity of the estate is destroyed.

It is lastly insisted, the legal estate escheated on the death of the surviving trustee, and that the statute could not thereafter run against the State. No discussion of this question would be profitable. If there was an escheat, it was of the naked legal estate, and when it devolved on the State, thereby the State became merely a trustee. The equitable estate of the appellee did not escheat, nor did the estate in remainder.—Lewin on Trusts, 289–93. When the State holds as a mere trustee, it is subject to the statute of limitations.—*Miller v. The State*, 38 Ala. 600.

We are constrained, therefore, to declare the statute of limitations protects the possession of the appellee, Henderson, and is a positive bar to the relief sought by the bill. This renders unnecessary a consideration of the assignments of error relating to the exceptions of the Register's report. The result is, on the cross-assignment of errors, the decree of the Chancellor must be reversed, and a decree here rendered dismissing the bill at the cost of Robert H. Molton, the next friend of the appellant, William P. Molton, in this court, and in the Court of Chancery. On the assignments of error by the appellant, the decree must be affirmed.