# Craft v. Simon.

## Statutory Action of Ejectment.

118  625
s125  699

1  *Probate court; jurisdiction in inquisition of lunacy.*—The Constitution, by granting to the General Assembly power to establish courts of probate, with general jurisdiction for the grant of letters testamentary, &c., does not thereby deny to the General Assembly the power to invest probate courts with original jurisdiction in the matter of persons of unsound mind; and the statute providing that courts of probate have jurisdiction over the appointment and removal of guardians for minors and persons of unsound mind, (Code of 1886, §787, subd. 6; Code of 1896, §3363, subd. 6), confers original jurisdiction upon probate courts to appoint guardians for persons of unsound mind, as extensive as in the case of probate of wills and the granting of letters testamentary, &c.

2. *Same; same; when petition for appointment of guardian sufficient.*—A petition, filed in the probate court, reciting that the petitioner is a friend of one S., a female 49 years of age, residing in Mobile, and a person of unsound mind and incapable of governing herself or of conducting and managing her affairs, and asking that the court take cognizance of the matter of the petition and determine whether or not the said S. was a person of unsound mind, is sufficient in its allegations to invoke the jurisdiction of the probate court, in inquisition proceedings under the statute, (Code of 1886, §2392; Code of 1896, §2257).—HEAD, J., *dissenting.*

3. *Same; same; when jury properly drawn.*—In an inquisition proceeding before a probate court for determining whether or not a certain named person is of unsound mind, where the

*40*

[Craft v. Simon.]

jury is drawn, summoned and impannelled in accordance with the special statute providing for the drawing of a jury whenever an issue is tried by jury in the probate court of the county where the proceeding is held, the organization of such jury is regular; and it is no objection thereto that it was not organized in accordance with the statute, (Code of 1886, §2393; Code of 1896, §2258), providing that the jury must consist of twelve disinterested persons of the neighborhood of the alleged lunatic; the special statute controlling.

4. *Same; same; sufficiency of writ issued to sheriff to confer jurisdiction of the person.*—Where, upon the filing of a petition in the probate court asking that a certain named person be declared of unsound mind, and that a guardian be appointed for such person, the court issues a writ to the sheriff, which, after setting out the facts averred in the petition, directs that "if it be consistent with the health and safety of said S., you are hereby required to take her body so that you may have her in said court," &c., and the return of the sheriff is that he executed said writ by taking into his custody the said named person, and "as it is not consistent with the health and safety to have her at the place of trial, she is not brought before the court," by such writ and the return thereon, the person alleged to have been of unsound mind is brought into court in the manner prescribed by statute, and the court has jurisdiction of the person; and it can not be objected that the alleged lunatic had no opportunity to be heard at the inquisition by reason of the writ being technically inaccurate in its direction to the sheriff, and not in accordance with the statute, which provided that by such writ, the judge should direct the sheriff "to take the person alleged to be of unsound mind, and if consistent with his health or safety have him present at the place of trial," (Code of 1886, §2393; Code of 1896, §2258).—HEAD, J., *dissenting.*

5. *Same; same; collateral attack.*—Where a petition filed in the probate court asking that a certain named person be declared of unsound mind, and that a guardian be appointed for such person, contains the proper jurisdictional averments, and there is an issuance and service of notice upon the party to be affected, in the manner prescribed by the statute, the jurisdiction of the probate court attaches and its conclusions can not be declared void on collateral attack; and the failure of the decree of the court to ascertain that the jurisdictional facts had been proven, does not affect the validity of the decree.

6. *Same; same; sufficiency of verdict of jury.*—In inquisitions of lunacy, the verdict of the jury that the alleged lunatic is "of unsound mind" is sufficient, at least on collateral attack, to

authorize a decree by the court declaring such person to be of unsound mind and appointing a guardian for such person.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. WILLIAM S. ANDERSON.

This was a statutory action of ejectment, brought by the appellee, Jetta Simon, against the appellant, John N. Craft, to recover a certain lot of land in the city of Mobile. After pleading the general issue, the cause was tried upon an agreed statement of facts, which were, so far as is necessary to be stated here, substantially as follows: The plaintiff, Jetta Simon, entered into the possession of the real estate, which is the subject of this litigation, on May 23, 1872, under a deed of conveyance, and continued in the actual, exclusive and adverse possession of said property, claiming the same as her own under said deed, until May 6, 1889. The defendant, John N. Craft entered into possession of the said property under a deed executed to him on May 17, 1889, by Henry Simon and wife. Henry Simon obtained title to the land under a deed executed to him by Ralph G. Richards, purporting to act as the guardian of Jetta Simon, which deed was executed on May 11, 1889. The defendant, John N. Craft, had held possession of the property from the time of his entrance under the deed from Henry Simon up to the institution of this suit.

There was introduced in evidence a full, true and exact copy of all the proceedings in the probate court of Mobile county, under which it was claimed that Jetta Simon was declared *non compos mentis* and Ralph G. Richards was appointed her guardian, and as such was authorized to make said conveyance to Henry Simon, from whom the defendant, John N. Craft, purchased the property. These proceedings were commenced by a petition filed in the probate court of Mobile county, duly verified by the oath of the applicant, and which was as follows: "To the Honorable Price Williams, judge of said court: Your petitioner, Ralph G. Richards, respectfully represents unto your honor that he is a friend to one Jetta Simon, and of her family. That said Jetta Simon is a female of the age of forty-nine years, and resides in Mobile and is of unsound mind, and incapable of governing herself, or of conducting and managing her affairs.

"Wherefore your petitioner prays your honor to take cognizance of the matter of this, his petition, and appoint a day for hearing the same, and that such proceedings may be had, as shall be necessary and proper, to determine according to law in such case made, whether or not the said Jetta Simon is a person of unsound mind.
[Signed.] "Ralph G. Richards."

On the filing of this petition, the following order was made by the court:

"This day came Ralph G. Richards and filed his petition in due form and under oath, alleging that said Jetta Simon, a female resident of this county, and of age, is of an unsound mind and incapable of taking care of herself or of managing her affairs, and praying that the necessary proceedings may be had, so as to have due inquiry and determination as to the truth of said allegations. It is, therefore, ordered that the 6th day of February, 1889, be appointed as a day for the hearing of said petition, and that a jury be drawn as the law directs for the trial of this issue. It is further ordered that a writ be issued to said sheriff requiring him to take the said Jetta Simon so that he have her in this court, to be present at said trial, if consistent with the health and safety of said Simon." The judge then issued the following writ:
"To the sheriff of said county: Whereas, Ralph G. Richards, as the friend of one Jetta Simon, hath this day filed his petition with the judge of said court, alleging that said Jetta Simon is a female lunatic, of the age of forty-nine years, and a resident of this county, and praying that an inquisition of lunacy may be made and had in due form of law to try the truth of said allegations, and as whether the said Jetta Simon is incapable of governing herself, and of attending to her affairs; and whereas, the judge of said court has by due order entered in the premises appointed the sixth (6th) day of February, 1889, for hearing said petition and for the due trial thereof.

"Now, therefore, if it be consistent with the health and safety of said Jetta Simon, you are hereby required to take her body so that you may have her in said court to be present at said trial, and before the jury then to be impannelled to make said inquisition," &c. Upon this writ there was indorsed the following return of the sheriff: "Received January 31st, 1889, and on the

[Craft v. Simon.]

same day executed the within writ of arrest by taking into my custody the within named Jetta Simon and handing her a copy of said writ, and as it is inconsistent with the health and safety of the within named Jetta Simon to have her present at the place of trial and on the advice of Dr. H. P. Hirshfield, a physician whose cert:ficate is hereto attached, she is not brought before the honorable court."

There was a venire for 24 jurors, regularly issued, from which the jury to hear the inquisition of lunacy was impannelled. There was appointed a guardian *ad litem of* Jetta Simon, who for answer to the petition, denied the matters and things averred therein.

Upon the trial of the issue, the following judgment entry was made: "This being the day appointed by reference to an entry thereof made upon the minutes of the court on the 30th of January, 1889, for the hearing of the petition of Ralph G. Richards, filed, alleging the lunacy of the said Jetta Simon, and praying an inquisition thereof, and it being shown that it would not be consistent with the health and safety of said lunatic to bring her into court at this time, and it appearing that due process had been served upon said lunatic notifying her of this proceeding; now comes the said Richards and a jury of good and lawful men who reside in the county of Mobile, and who having been summoned, to-wit, John Pollock, Jr., and eleven others, who having heard the evidence, the arguments of counsel and the charge of the court in the premises, and being first duly tried, impannelled and sworn well and truly to make inquisition of the facts alleged in said petition and a true verdict to render according to the evidence upon their oaths, do say: 'We, the jury, find Mrs. Jetta Simon to be of unsound mind.' It is ordered, adjudged and decreed by the court that said petition and all other proceedings thereon, together with the aforesaid verdict of said jury declaring the said Jetta Simon a lunatic be recorded."

Thereupon a guardian was appointed as shown by the following order: "This day comes Ralph Richards, and applied for letters of guardianship over the estate of said lunatic, and he now entering into bond and security in the sum of $7,000, with H. J. Simon and M. Goldstein as his sureties, which bond, with said sureties, has been taken and approved by the judge of this court, it is

ordered and decreed that letters of guardianship over the estate of said Jetta Simon, lunatic, issue to Ralph Richards." Ralph Richards gave the bond required, and entered regularly upon the discharge of the duties as guardian. It was while acting as the guardian of Jetta Simon that he filed the petition for the sale of the property involved in this suit.

As stated in the opinion, there was no question raised as to the regularity of the petition for the sale of the land, the proof in support of it, the confirmation of the report of sale, and the execution of the deed to the purchaser; and it is, therefore, unnecessary to set these out in detail.

The court at the request of the plaintiff gave the general affirmative charge in her behalf. The defendant appeals, and assigns as error the giving of this charge.

PILLANS, TORREY & HANAW, for appellant.—Even on direct attack, the proceedings in lunacy against Jetta Simon were valid and sufficient. The proceedings were judicial.—*Campbell v. Campbell,* 39 Ala. 312; Buswell on Insanity, §§59, 62; *Laughinghouse v. Laughinghouse,* 38 Ala. 257. The English chancery jurisdiction is by our statutes vested in the probate court, which accordingly is governed by the rules and principles formerly obtaining in the English chancery; and the provision that the petition must be brought in by a relation or friend "is substantially the rule in the English chancery."—*Campbell v. Campbell,* 39 Ala. 312. The court acts judicially in determining whether the petition is presented by a proper person, etc., and always has the interest of the alleged *non compos.* in mind.—Shelford, Lunacy, 92, 93. The said essential office of the inquisition in lunacy is the ascertainment of the mental soundness of the subject.—Shelford, Lunacy, 108-112; 630 *et seq.* When found *non compos* or of unsound mind a committee was always appointed.—Shelford, Lunacy, 108, 109, 111; *Re Lindsley,* 6 Amer. St. Rep. 913; *Jenkins v. Jenkins,* 26 Amer. Dec. 437; *Foster v. Means,* 42 Amer. Dec. 332; *Rawdon v. Rawdon,* 28 Ala. 565; Shelford, Lunacy, 2, 87; *McElroy v. McElroy,* 5 Ala. 81; *Dexter v. State,* 15 Wall. 9; *Re Baker,* 2 Johns. Ch. 232. The jury were summoned in strict accordance with Mobile local statute which superseded the Code in that county.

Acts of 1882-83, pp. 509, 511, §§12, 18. Judge in summoning is presumed to have preformed his duty, the presumption not contradicting the record.—*Wilson v. Brown,* 58 Ala. 64; *Brandon v. Snows,* 2 Stew. 255; *Cotton v. Holloway,* 96 Ala. 550; *Pollard v. Amer. &c. Mortgage Co.,* 103 Ala. 295; *Perry Co. v. Railroad Co.,* 58 Ala. 557. The notice effected by the writ of arrest of Mrs. Simon, which was in terms identical with that passed on in *Fore v. Fore,* 44 Ala. 478, was sufficient.

But they can not, for any of the supposed errors pointed out, be held void on this collateral impeachment of them and of titles acquired by strangers under them. The proceedings were commenced by the filing of a jurisdictional petition, verified, and notice had by the alleged *non compos,* and the case regularly conducted to a decree appointing a guardian for her as one of unsound mind. The jurisdiction having attached, no errors or irregularities, however profound or numerous, could defeat this judicial action; particularly when followed by a proceeding for a sale and a sale.—*Pollard v. Amer. Mortg. Co.,* 103 Ala. 295; Busw. Ins. §67; *Graff v. Louis,* 71 Fed. Rep. 591; 2 Freeman Judgments, 523-4; Vanfleet Collateral Attack, 3, §1; *Comstock v. Crawford,* 3 Wall. 403; *Voorhees v. Jackson,* 10 Pet. 449; *Succession of Keller,* 2 So. Rep. 553; *Landford v. Dunklin,* 71 Ala. 603. And jurisdiction having once attached, no difference is made between the presumptions indulged in favor of and the conclusiveness of the action of special and general tribunals.—Vanfleet Collateral Attack, 805, 809, 869.

The proceedings for sale or decree of sale, conclusively on collateral attack, settle the now mooted question of the rightfulness of the guardian appointment. It is now beyond question.—*Dutcher v. Hill,* 77 Amer. Dec. 572; *Landford v. Dunklin,* 71 Ala. 604; *Kling v. Connell,* 105 Ala. 590.

GREGORY L. & H. T. SMITH, *contra.*—1. If, for any reason, the appointment of a guardian for a lunatic is void, then any sale he may make of the alleged lunatic's property, is a nullity.—*Molton v. Henderson,* 62 Ala. 430. And the validity of such appointment can be attacked collaterally.—*Molton v. Henderson, supra; Eslava v. Lapretre,* 21 Ala. 504; *Moody v. Bibb,* 50 Ala. 248. In the sale of real estate by an administrator of a decedent, the probate court is a court of general juris-

diction, but even in such a case as that, the sale can be collaterally attacked where the appointment of the administrator is void for want of jurisdiction in the court making the appointment.—*Hooper v. Scarborough*, 57 Ala. 514; *Allen v. Kellum*, 69 Ala. 446; *Bean v. Chapman*, 73 Ala. 144.

2. If the court that rendered a judgment acts as a court of general jurisdiction, everything is presumed to be within its jurisdiction, not affirmatively shown by the record to be without its jurisdiction, while if the court is one of special or limited jurisdiction, nothing will be presumed to be within its jurisdiction which is not so affirmatively shown by the record.—*Pettus v. Mc-Clannahan*, 52 Ala. 57; *Bottoms v. Brewer*, 54 Ala. 289; *Goodwin v. Sims*, 86 Ala. 108.

3. The probate court has no jurisdiction as a court to determine or adjudge a person to be a lunatic; that jurisdiction is vested by the statute in a special tribunal consisting of the judge of probate, and a jury to be drawn and summoned in a specific manner. Until the matter was regulated by statute, the probate court had no jurisdiction to adjudicate the question of sanity *vel non;* that jurisdiction was vested in the chancery court. 11 Amer. & Eng. Encyc. of Law, 114. If the probate court now has such jurisdiction, the statute law of this State must be looked to for its source and extent. The statute of February 10, 1806, conferred jurisdiction upon the orphans court to order the sheriff to hold the inquisition, but did not confer jurisdiction upon the court itself to hold it; it did not even authorize the judge of probate to order the inquisition to be held in the presence of the judge of probate.—Aikin's Dig. 250, note. The law, as declared in *Eslava v. Lepretre*, 21 Ala. 504, remained substantially unchanged by the Code of 1852, except that the hearing by the jury is always had before the judge of probate court.—*Laughinghouse v. Laughinghouse*, 38 Ala. 257.

4. Even if the probate court had expressly adjudicated all of the facts necessary to give it jurisdiction to appoint Ralph G. Richards as guardian of appellee, such adjudication would not be binding, for the reason that the court has, as we have shown, no power to make the adjudication.—*Goodwin v. Sims*, 86 Ala. 108.

5. No writ was issued to the sheriff commanding him

to summon twelve disinterested persons of the neighbor-
hood for the trial of the inquisition.   The writ did not
direct the sheriff to summon a jury for the trial of the
allegations of the petition.   No proper opportunity was
given to appellee to appear at the inquest and defend
the question of sanity *vel non*.   The issuance and ser-
vice of process, in due form of law, was absolutely essen-
tial to the validity of the proceedings.—*Molton v. Hen-
derson*, 62 Ala. 430; *Moody v. Bibb*, 50 Ala. 248; *McCur-
ry v. Hooper*, 12 Ala. 826; *Eslava v. Lapretre*, 21 Ala.
504.   The writ of arrest was not in the form prescribed
by the Code.   Such a writ would have directed the
sheriff to take the person alleged to be of unsound mind,
and, if consistent with her health or safety, have her
present at the place of trial, while the writ actually is-
sued commanded the sheriff to take the person alleged
to be of unsound mind, if consistent with her health or
safety, so that he might have her present at the place of
trial.   The sheriff took the person of the appellee, but
did not have her present at the trial.—*Fore v. Fore*, 44
Ala. 478; *Windsor v. McVeigh*, 93 U. S. 274; *Cox v.
Johnson*, 80 Ala. 25.

6. It does not affirmatively appear from the record
that it was ever adjudicated that the petition for a writ
of lunacy was filed by a friend or relative, nor does it
affirmatively appear that appellee was over the age of
twenty-one years, or a resident of Mobile county.   Each
of these matters was jurisdictional, and every jurisdic-
tional fact must affirmatively appear upon the record, in
order to uphold the validity of the proceedings.—*Pettus
v. McClannahan*, 52 Ala. 58; *Bottoms v. Brewer*, 54 Ala.
289.

7. For the ascertainment of the several jurisdictional
allegations of the petition, we must look to the verdict
of the jury.   It is to the jury alone, that the determina-
tion of these matters is confided, and it is only upon its
ascertainment of them that the probate court is author-
ized to grant letters of guardianship.   The verdict in
this case only found that the appellee was *non compos*,
and did not find the other facts alleged in the petition
to be true, and as the court was only authorized to ap-
point a guardian upon a verdict ascertaining such facts
to be true, its appointment of Ralph G. Richards was

SUPREME COURT [Nov. Term,

necessarily without jurisdiction, and absolutely void: *Eslava v. Lepretre*, 21 Ala. 504; *Moody v. Bibb*, 50 Ala. 248; *Molton v. Henderson*, 62 Ala. 430. That a verdict ascertaining the facts alleged in the petition to be true is jurisdictional, and that the appointment of a guardian without such a verdict is absolutely void, has been adjudicated in several States.—*Guthric v. Guthrie*, 51 N. W. Rep. 13; *State v. Billings*, 57 N. W. Rep. 206; *Menefee v. Ens*, 30 S. W. Rep. 882.

COLEMAN, J.—Jetta Simon, the appellee, sued in ejectment to recover a certain lot of land. The facts were substantially agreed upon, and upon the evidence, the court instructed the jury to find for the plaintiff. The conclusion of the court from the evidence is questioned by the assignments of error. The land sued for, at one time belonged to the plaintiff; and the issue involved was whether the defendant had acquired her title.

Upon proceedings instituted in the probate court of Mobile county, Jetta Simon had been declared to be of unsound mind, and one Ralph G. Richards was appointed her guardian. It was upon his petition as guardian that the land was sold under and by virtue of a decree of the probate court. The defendant Craft became the purchaser, paid the purchase money, the sale was confirmed and a deed duly executed to him. The regularity of the petition for the sale of the land, the proof in support of it, the confirmation and the execution of the deed to the purchaser, are not questioned. The real question is, whether Jetta Simon was legally declared to be of unsound mind. This being established, the remainder of the proceedings, including the acquisition of title by the defendant, cannot be assailed. The sufficiency of the petition to institute an inquiry into the soundness of mind of Jetta Simon was not questioned in the court below, nor has it been questioned in the argument of counsel on this appeal.

It is contended that the authority of the court to appoint a guardian being dependent upon the fact that Jetta Simon was legally declared to be of unsound mind, unless the record furnishes the evidence for the exercise of the authority, the appointment itself must fall; and if there was no legally appointed guardian, then there

could be no valid sale upon his petition.—*Eslava v. Le-pretre,* 21 Ala. 504; *Moody v. Bibb,* 50 Ala. 245; *Walton v. Henderson,* 62 Ala. 426. This is the argument of appellee. Conceding the proposition to be sound, the question for consideration, as we have stated it, is whether Jetta Simon was legally and properly found and declared to be of unsound mind, so as to authorize the appointment of a guardian.

It is said that the court had no jurisdiction to make the appointment: First, because no jury, constituted as required by law to make inquisition of lunacy, was ever drawn, summoned or impannelled. Second, because no opportunity was afforded to appellee to be heard at the inquisition. Third, because no verdict was rendered in the proceedings to declare her a lunatic, ascertaining the jurisdictional facts, or justifying the appointment of a guardian.

Section 787 of the Code of 1886 (Code of 1896, §3363) is as follows: *"Jurisdiction of courts of probate.* Courts of probate have, in the cases defined by law, original jurisdiction of, * * * *

"Subdiv. 6. The appointment and removal of guardians for minors and persons of unsound mind."

The fact that the Constitution granted the General Assembly power to establish courts of probate, with general jurisdiction for the grant of letters testamentary, etc., furnishes no argument that the General Assembly is denied the power to invest probate courts with original jurisdiction in the matter of persons of unsound mind.—*State ex rel. Winter v. Sayre, ante* p. 1.

The jurisdiction to appoint guardians for persons of unsound mind is as extensive as in the case of probate of wills, the granting of letters testamentary, sales of property of intestates, allotment of dower, and partition of lands, all of which are enumerated, with other subject-matters of jurisdiction, under said section 787. Said section 787 and sections 2390, 2391, 2392, of Code of 1886 (Code of 1896, §§3363, and 2255, 2256, 2257) declare that the probate court has authority, and it is the duty of the court, to appoint guardians for persons of unsound minds, and although the statute provides that a guardian shall not be appointed, "until an inquisition has been had and taken as hereinafter directed," the proceedings are nevertheless before the probate court as a

court, and the issues are determinable in that court. The jurisdiction attaches both as to the subject matter and the person upon the filing of a proper petition, and the issuance and service of notice upon the party to be affected, in the manner prescribed by the statute. The petition is in strict accordance with section 2392 of Code of 1886 (Code of 1896, §2257), which prescribes the allegations that the petition shall contain in the inquisition proceedings.

As to the first ground of objection that no jury was summoned as provided by law: Section 2393 of the Code of 1886 (Code of 1896, §2258) provides that the jury must consist of "twelve disinterested persons of the neighborhood" of the alleged unsound person. If there was a special statutory tribunal, of which the jury constituted a part, to determine the issues, as we understand counsel for appellee to insist, there would be some force in the argument. But if the issue is to be tried before the probate court, as we have determined, then the statute of 1882-83, pp. 501, 509, must control. This statute provides how the jury shall be drawn, whenever an issue is to be tried by a jury in the probate court of Mobile county. The jury seems to have been drawn in accordance with the statute. We are of opinion the objection is not well taken.

The second ground of objection is, that the appellee had no opportunity to be heard at the inquisition. This objection is based upon the character and wording of the writ directed to the sheriff. The provision of the statute is, that the judge must "issue a writ directed to the sheriff to take the person alleged to be of unsound mind, and, if consistent with his health or safety, have him present at the place of trial." The writ that issued, after setting out the facts averred in the petition, proceeded: "Now, therefore, if it be consistent with the health and safety of said Jetta Simon, you are hereby required to take her body so that you may have her in said court," etc. The statute is that the sheriff be directed to take her body, and if consistent with health, etc. By the statute it is made the duty of the sheriff to take the body, without condition, and if consistent with health and safety to have her present at the trial. The writ issued directed the sheriff, "if consistent with health and safety to take her body," etc. The return

of the sheriff shows that the writ was executed in accordance with the statute. It is: "I executed the within writ of arrest by taking into my custody the within named Jetta Simon, and handing her a copy of said writ, and, as it is inconsistent with the health or safety * * * to have her at the place of trial, * * * she is not brought before the court." Technically the writ of the judge was not accurately correct. Its meaning, however, is evident. The sheriff's return was complete and regular in every respect. We do not doubt she was brought into court in the manner prescribed by statute, and that she was subject to its jurisdiction. The second objection cannot be sustained.

The third objection finds some support in the phraseology of the statutes, and has been forcibly and ingeniously presented. After a careful consideration of the statutes enacted from 1866 to the adoption of the provisions of the Code of 1886, defining and regulating inquisitions of lunacy, and appointment of guardians for persons of unsound mind, we are led to the conclusion that the purpose and intention of the legislature by the adoption of the Code statutes was to declare the whole law upon the subject, and thereby repeal all former statutes in relation thereto. Applying the same rules of construction to the statutes which confer jurisdiction upon the probate courts in the matter of the appointment of guardians for persons of unsound mind as are applied to like statutes, which confer jurisdiction in matters of partition of lands, etc., we hold that upon the filing of a proper petition, and the service of summons and notice in the manner prescribed, the jurisdiction of the court attaches, and its conclusions are not void on collateral attack. Jurisdiction having attached, the failure of the decree to ascertain that the jurisdictional facts had been proven, would not affect the validity of the decree. *Pollard v. Amer. &c. Mortgage Co.*, 103 Ala. 289, and authorities cited. Errors and irregularities must be corrected by direct appeal or writ of *certiorari*. Any other view would greatly embarrass guardians appointed by the court in such cases, and deter purchasers at sales, though ordered by the court, and would not be reconcilable with well settled principles applying in cases in which there does not seem to be any valid reasons for a distinction.—*Fore v. Fore*, 44 Ala. 478; *Campbell v. Campbell*, 39 Ala. 312; *Pollard v. Am. F. L. M. Co.*, 103

Ala. 289; *Kling v. Connell*, 105 Ala. 590; *Landford v. Dunklin*, 71 Ala. 603.

The jury by their verdict found "Mrs. Jetta Simon to be of unsound mind." The statute requires the court to appoint guardians for persons of "unsound mind." The finding of the jury was sufficient, at least on collateral attack, to authorize the appointment. The court erred in giving the affirmative charge requested by the plaintiff.

There was no provision in the statute which conferred jurisdiction upon chancellors to remove the disabilities of coverture, prescribing the constituents of a petition for such relief. Had there been, the sufficiency of a petition which complied with such requirements, would not have been questioned. The petition in the present case strictly complied with the statute.—Code, §2392, *supra*. Moreover, the statute conferring jurisdiction upon the probate court to make inquisition in such cases, is broader in terms than the statute which conferred jurisdiction upon chancellors to grant relief from the disabilities of coverture.

Reversed and remanded.

HEAD, J., *dissenting*.—The question in this case is, whether or not the probate court had jurisdiction to appoint Ralph G. Richards guardian of the person and estate of Jetta Simon, alleged to have been a person of unsound mind.

It is not disputable that the jurisdiction of that court of the appointment of guardians of persons of unsound mind, being statutory, is special and limited; and that every fact made by the statute a prerequisite to the exercise of the jurisdiction must appear, affirmatively, upon the face of the court's proceedings in order to uphold the validity of the appointment.

The statute, by which the validity of the appointment now in question is to be tested, is contained in the article and chapter of the Code of 1886, beginning with section 2390, (Code of 1896, §2255). That section (2390) provides that: "The court of probate has authority, and it is a duty, to appoint guardians for persons of unsound mind residing in the county, having an estate, real or personal, and of persons of unsound mind residing without the State, having within the county property

requiring the care of a guardian, under the limitations, and in the mode hereinafter prescribed."

Thus we see, the requisites defined by this section, to be established in the mode prescribed by subsequent provisions of the article, are:  1. That the person is of unsound mind.  2. That he or she resides in the county where the proceeding is had; and 3. That he or she has an estate, real or personal; or 1. That the person is of unsound mind.  2. That he or she resides without the State; and 3. That he or she has property in the county requiring the care of a guardian.

Section 2392 (Code of 1896, §2257) provides that, "Upon the petition of any of the relatives or friends of any person alleged to be of unsound mind, setting forth the facts and name, sex, age and residence of such person, accompanied by an affidavit that the petitioner believes the facts therein stated to be true, the court of probate of the county in which such person alleged to be of unsound mind resides, must appoint a day, not more than ten days from the presentment of such petition, for the hearing thereof."

Thus we see, that the facts required by section 2390, as above stated, are required to be set out in the petition, and in addition thereto, the petition must show that it is filed by a relative or friend of the person alleged to be of unsound mind, and must set forth the name, sex and age of such person.  These are the jurisdictional facts required to be set forth, as the basis of the inquisition and ascertainment, by the verdict of a jury, whether or not they are true.  Thus, section 2394 (Code of 1896, §2259) requires, that a "jury must be impannelled and sworn well and truly to make inquisition of the facts alleged in the petition, and a true verdict render according to the evidence;" and section 2395 (Code of 1896, §2260) provides that, *if the jury find by their verdict that the facts alleged in the petition* are true, and that such person is of unsound mind, the court must cause the petition and all the proceedings thereon to be recorded, and appoint a suitable guardian;" and section 2391 (Code of 1896, §2256) declares that a guardian for a person alleged to be of unsound mind, residing in the county, must not be appointed until an inquisition has been had and taken as directed in the article.

Were these proceedings conformed to, in the case of

Jetta Simon, so as to confer jurisdiction upon the probate court to appoint Richards her guardian?

We will look first at the petition, and see if it shows the jurisdictional facts which the statute requires it to show. It shows that it was filed by said Richards, and that he was a friend of said Jetta and her family; it states the age and sex of said Jetta; her residence in Mobile county, where the proceeding was had, and that she is of unsound mind, and incapable of managing her affairs. This is all, save the prayer. It, therefore, omits one of the most vital jurisdictional facts. Upon reading section 2390, it is seen that the jurisdiction is not conferred to appoint guardians for persons of unsound mind *generally,* but for such persons, if residing in the county, *having an estate, real or personal;* or if residing without the State, having, within the county, property requiring the care of a guardian. It nowhere appears in the proceedings that Jetta Simon had an estate, real or personal, anywhere.

The case is stronger against the validity of the proceeding than that of *Cohen v. Wollner,* 72 Ala. 233. There the statute was, "That the several chancellors in this State, either in term time or vacation, are hereby authorized and empowered to relieve married women of the disabilities of coverture, as to their statutory and other separate estates, so far as to invest them with the right to buy, sell, hold, convey and mortgage real and personal property, and to sue and be sued as *femmes sole,* whenever the wife by her next friend, shall file her petition in the court of chancery for the district in which she resides, praying that she be decreed, for the purposes aforesaid, to be declared a *femme sole.*" The petition of the wife, under this statute, then before the court, did not state that she had a statutory or other separate estate. The decree, upon that petition, removing her disabilities, was being collaterally assailed. The court held that the petition was fatally defective, on account of the omission stated; that the chancellor was, consequently, without jurisdiction and his decree void. Chief Justice STONE said: "What are the essentials to put this statutory jurisdiction into exercise? The petitioner must be a married woman. The statute provides for none other. She must have an estate, for the powers of the chancellor can be invoked and exercised only in reference to her es-

[Craft v. Simon.]

tate. The estate must be separate, either statutory or otherwise. Such is the statute, and the chancellor's power is confined by the statute to that description of estate. We say, she must have an estate. Courts pronounce on existing rights, and existing conditions; not on future possibilities. A petition under this statute, averring that the petitioner had no estate, statutory or otherwise, would certainly be demurrable. The chancellor would not pronounce judgment on a mere abstraction, or imaginary case. A real subject of judicial inquiry must be before the court. A proceeding to obtain the judgment of the court as to a right of property, when there is no such property in existence is certainly an anomaly. The statute requires that such petition shall pray that the petitioner 'be decreed, for the purposes aforesaid, a *femme sole.*' The purposes aforesaid are, relief from 'the disabilities of coverture as to her statutory and other separate estate.' How can she be under disabilities, when she has no estate? And how can the chancellor confer on her power over that she has not, and never may acquire? The petition found in these records, under which it is claimed Mrs. Cohen was relieved of the disabilities of coverture is fatally defective in substance, and did not put this statutory power of the chancellor into exercise. It entirely omits to aver that she had any estate of any kind, statutory or otherwise; and thus fails to show she was entitled to the relief the statute offers. A failure to make a jurisdictional averment, in statutory proceedings like this, is equivalent to an admission that there is no fact on which to base such averment. The chancellor never having acquired jurisdiction, the whole proceeding was and is void."—Citing a number of Alabama cases. This case has been followed in the following: *Stoutz v. Burke,* 74 Ala. 530; *Voltz v. Voltz,* 75 Ala. 555; *Falk v. Hecht, Ib.* 293; *Hatcher v. Diggs,* 76 Ala. 189; *Powell v. N. E. Mortgage &c. Co.,* 87 Ala. 602. In *Cox v. Johnson,* 80 Ala. 24, the same principle was applied to the statute for relieving minors of their disabilities. In these cases, in reference to the disabilities of married women, we have seen, the statute did not, in terms, provide what the petition should contain. Here, it expressly requires that it shall contain these facts.

The principle above declared, that the statutory juris-

[Craft v. Simon.]

dictional facts must affirmatively appear of record when the jurisdiction is statutory and limited, as in this case, is as old to this court as the organization of the court itself, and has been declared and enforced in decisions numbered by scores. There is no more firmly established rule of property in this State.

The probate court, by reason of the omission mentioned, was, unless the rule be set at naught, without jurisdiction to appoint a guardian and the appointment of Richards was void.

But, if this were otherwise; if the petition had alleged all these requisite facts, we find there is wanting the judicial ascertainment of the truth and existence of such facts which the statute, in terms, provides shall be had before the appointment of a guardian shall be made. A requirement of a petition stating certain named facts would be the emptiest form without some adequate procedure for the ascertainment of their truth, and until their truth is judicially ascertained and established in the mode prescribed by law, the case they make can not, in the view of a court of justice, be said to exist. We search the record of the proceedings in vain to find thereon an ascertainment, judicial or otherwise, by jury or judge, that either of the jurisdictional facts to which I have referred, ever had an existence, except that Jetta Simon was a person of unsound mind. Although the jurisdiction is confined to persons of unsound mind who have estates, real or personal, and who, unless non-residents of the State, reside in the county where the proceedings are instituted, there was no ascertainment whatever that Jetta Simon resided in Mobile county, or that she had any estate whatever, real or personal. So far as these proceedings ascertain (or even allege, as for that matter), the appointment of Richards was a mere effort to commit to him the care and keeping of the person of Jetta Simon, a person residing we know not where, and owning no estate—a case for which the law makes no provision whatever. The statute expressly provides how the facts shall be judicially ascertained; in terms, requiring that a jury shall "make inquisition of the facts alleged in the petition, and a true verdict render according to the evidence," and then declares, that *"if the jury find* by their verdict, that *the facts alleged in the petition* are true and that such person is of

unsound mind, the court must cause the petition and all the proceedings thereon to be recorded, and appoint a suitable guardian of such person." It thus becomes, first, by the allegation of the essential facts in the petition, and next by the judicial ascertainment by a jury that the facts so alleged are true, a case where the probate court is authorized to appoint a guardian. This ascertainment by a jury, is manifestly, a *sine qui non* to the exercise of the jurisdiction. Language could not be plainer. The verdict simply was that Jetta Simon was a person of unsound mind, thus failing to ascertain any of the other jurisdictional facts. The effect of the majority opinion is that the very, the *only* means provided and required by the statute for the judicial ascertainment and establishment of facts which constitute the case in which, by the statute, the probate court is authorized to appoint a guardian, is a mere matter of regulation, and its non-observance a mere irregularity. If this be true, then, most clearly, no verdict at all need be rendered in order to uphold the appointment; for if a verdict may omit to find all the facts but one, and still be sufficient, a finding of none of the facts is essential; and if this be true, the requirement of an inquisition and the mode of conducting it, prescribed by the statute, would be likewise matters of regulation, and their non-observance would not affect the validity of the appointment, for surely the verdict required by the statute to be rendered is the sole end and aim of the inquisition, without which the inquisition would amount to nothing, and this verdict, to be of any force at all, must be the verdict which the statute requires. It must ascertain that the facts stated in the petition are true. The result would be that the probate court would be authorized to appoint the guardian upon bare allegations of facts, unproven, unascertained by any judicial proceeding; and the order of the probate court appointing the guardian would be conclusive evidence of its authority to make the appointment. If this be a correct construction of the statute, I would hesitate to say that it is not violative of both the Federal and State Constitutions, in that, by virtue of it, a person may be deprived of the possession of his property without due process of law.

It is said in the opinion of the court, that, "The jurisdiction to appoint guardians for persons of unsound

over whom the statute extends the jurisdiction, to-wit, *those having an estate, real or personal,* much less proof, minds is as extensive as in the case of probate of wills, the granting of letters testamentary, sales of property of intestates, allotment of dower and partition of lands, all of which are enumerated, with other subject-matters of jurisdiction, under said section 787" of the Code. As I understand the rule, this statement is partially incorrect. As to sales of property of intestates, allotment of dower and partition of lands, it is correct, but as to probate of wills, the granting of letters testamentary, and of administration, and of orphans' business, the jurisdiction is derived from the Constitution, and is, therefore, general; and like all other courts of general jurisdiction its decrees, in those matters, are valid, unless by something appearing upon the record it is affirmatively shown that some jurisdictional facts did not exist in the particular case; whereas, in those proceedings wherein the jurisdiction of the court is of purely legislative creation, such as sales of property of intestates, dower proceedings, partition, and the like, the jurisdiction is special and limited, and no intendments will be indulged to support its exercise. The facts which the statute makes essential to the jurisdiction must affirmatively appear upon the record, or else the decree will be void.

For the authorities making this distinction plain, see the collation in 3 Brick. Dig., 181, §§71, 72. Take the case of *Sims v. Waters,* 65 Ala. 442, there cited, and from it we see, that in the settlement of intestates' estates, before the probate court, prior to the grant, to that court, of general jurisdiction of such settlements, by the Constitution of 1868, the jurisdiction was special and limited; whereas, after the constitutional grant, it was general.

The statute, §787 of the Code, does not undertake or profess to constitute the probate court a court of *general* jurisdiction of any matter. Original jurisdiction of the specified subjects-matter is conferred, but like all purely statutory jurisdictions, those not given by the Constitution, must not only be exercised substantially as the statute requires, but the essential facts—those which make up the jurisdiction—must affirmatively appear.

The summation of the decision of the court is, that the probate court may appoint a guardian of a person

[Tillis v. Dean.]

of unsound mind without an allegation, even, that the person is of that class of persons *non compos mentis* or judicial ascertainment, that the person is of that class. There is not, from the beginning to the end of the proceedings, in the matter of the appointment of Richards, an intimation that Jetta Simon was a person of unsound mind having an estate, real or personal: Nor it is necessary that the further jurisdictional facts be judicially established by the inquisition and verdict which the statute requires, unless the court would hold that it *is necessary* that there should be a verdict finding that the person was a "person of *unsound mind,*" as there was in the case of Jetta Simon, and which is now held to have been sufficient, without more.

In the view I take of the decision, it is a departure from so many adjudications of this court holding, that in statutory proceedings, of this kind, before courts of special and limited jurisdiction, the jurisdictional facts must appear of record, that I feel it my duty to file my dissent.